UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

KELLY LINDBERG and JULIE LINDBERG,

      Plaintiff,

v.

BANK of AMERICA, N.A., individually
and as successor by merger to BAC HOME
LOANS SERVICING, L.P., and as
successor by merger to COUNTRYWIDE
BANK, N.A., *et al.*,

      Defendants.

_____/

CASE NO. 1:15-CV-600

HON. ROBERT J. JONKER

## OPINION AND ORDER

This matter is before the Court on Defendants Bank of America, N.A. and Ocwen Loan Servicing, LLC's Motion to Dismiss (docket # 14). The motion is fully briefed. The Court does not believe oral argument is necessary to resolve the motion. Because the Court is dismissing the only federal claims on motion, the Court is also declining supplemental jurisdiction over state law claims and dismissing these without prejudice. This ends the case in this Court.

## FACTUAL ALLEGATIONS

In November 2005, Plaintiff Julie Lindberg entered a "home financing arrangement" with Countrywide Bank, N.A., under which she executed at least one promissory note and two mortgages. (Compl., docket # 1, ¶ 20.) At closing, an agent of a company called ALLIED informed Ms. Lindberg that Mr. Lindberg was required to sign the mortgage documents for the sole purpose of

consenting to the grant of the mortgages to his wife.[1] (*Id.* at ¶ 21.) Mr. Lindberg executed the two mortgages. (*Id.* at ¶ 23.) Plaintiffs did not receive copies of the executed note and mortgages until 2014, when BOA initiated eviction proceedings against them. (*Id.* at ¶ 26.) Only then did Plaintiffs become "aware that someone had forged and added handwritten language on Ms. Lindberg's mortgage agreements after Plaintiffs had signed the documents and without their knowledge, consent or approval that purported to make [Mr.] Kelly Lindberg a co-borrower on the mortgages." (*Id.* at 27.) In each mortgage agreement, "Borrower" was defined in typeset as "JULIE A LINDBERG, A MARRIED WOMAN" and, in handwritten words, "Kelly Lindberg, her husband." (*Id.*)

In 2010, before the expiration of a five-year fixed interest period, Plaintiff Julie Lindberg met with an employee of BOA, Marisol Lindstrom, seeking to refinance. (*Id.* at ¶ 29.) At that time, "Julie Lindberg had not defaulted in making her payments under the note and mortgages." (*Id.* at ¶ 30.) Ms. Lindstrom "refused to refinance the mortgages and instructed [Ms.] Lindberg that neither BOA nor any other bank would grant her a refinance." (*Id.* at ¶ 31.) Ms. Lindstrom, "represent[ed] to Plaintiffs that BOA could not refinance the loans because of Plaintiff Julie Lindberg's marital status and because Plaintiff Julie Lindberg's husband, Kelly Lindberg, was not a co-borrower on the note." (*Id.* at ¶ 33.) Ms. Lindstrom "actively misled Plaintiffs by knowingly representing or making representations with reckless disregard for the truth that Plaintiff's mortgaged residence was worth less than the balance of the outstanding debt . . . ." (*Id.* at ¶ 35.) Ms. Lindstrom informed Ms. Lindberg there was no point in continuing to make loan payments, because the bank was going to foreclose, and that her "only recourse was to file bankruptcy to avoid having to pay BOA for the balance after foreclosure." (*Id.* at ¶ 38.)

---

[1] ALLIED has not been named as a defendant in this case.

In July 2010, "relying on BOA's characterization of the position she was in, Ms. Lindberg stopped making payments on the mortgage and home equity line of credit loan." (*Id.* at ¶ 41.) The same month, Ms. Lindberg filed for bankruptcy under Chapter 7, "[b]ased upon the instructions to file bankruptcy received from BOA's representative, and a foreclosure by advertisement proceeding commenced against both Plaintiffs." (*Id.* at ¶ 42.) BOA successfully sought to have the real property to which the mortgages applied (the "Property") excluded from Ms. Lindberg's bankruptcy. (*Id.* at ¶ 43.) Ms. Lindberg's bankruptcy proceeding concluded in November 2010. (*Id.* at 44.)

"Sometime between August 2010 and January 2012, Defendant BOA dropped the foreclosure proceedings against Plaintiffs but did not inform Plaintiffs of its cancellation of the foreclosure." (*Id.* at ¶ 47.) In January 2012, BOA again initiated foreclosure by advertisement proceedings but at no point notified Plaintiffs that it had done so. (*Id.* at ¶ 48.) In August 2012, BAC Home Loans, Inc. ("BAC"), which actually had been merged into BOA about a year earlier, brought a quiet title action in Muskegon County Circuit Court to establish the priority of the two mortgages. (*Id.* at ¶ 49 and Ex. E.) BOA did not cancel the foreclosure during the pendency of the quiet title action, but "allegedly kept adjourning it throughout." (*Id.* at ¶ 59.) A sheriff's sale took place on February 14, 2014. (*See id.* at ¶ 63.) Plaintiff alleges "on information and belief" that "the week-to-week adjournments are forged." (*Id.* at ¶ 60.) "The Muskegon County Sheriff's Department and the sheriff deputy who allegedly sold the property at the sheriff's sale have no records of the adjournments. . . ." (*Id.* at ¶ 60.) Plaintiffs "were never made aware" of the second foreclosure by advertisement. (*Id.* at ¶ 64.) "Had Plaintiffs been made aware of the second foreclosure, or the sheriff's sale, Kelly Lindberg had the means to, and could have, redeemed the property out of the foreclosure." (*Id.* at ¶ 66.) According to Plaintiffs, Defendants purposely engaged in fraudulent

3

conduct "to increase and maximize their revenues by forcing Plaintiff Julie Lindberg into foreclosure in order to protect [their] profits, conceal their underlying fraud and mortgage forgeries, and escape civil and/or criminal liability for their acts." (*Id.* at ¶ 162.) Plaintiffs allege that Defendants benefitted by "escaping the consequences of the initial fraud and forgeries, retaining their prior realized profits, and realizing additional profits from the federal government's mortgage insurance and/or bailout funds as well as the acquisition of Plaintiff's residence through induced foreclosure and eventual resale at a profit." (*Id.*)

Based on these factual allegations, Plaintiffs assert claims of fraud (Count I); Fraud by Forgery (Count II); Breach of Contract (Count III); and Violations of the Racketeer Influenced and Corrupt Organizations Act ("RICO") (Count V).[2] Defendants move to dismiss Plaintiffs' claims. (docket # 14.)

## LEGAL STANDARDS

In considering a motion to dismiss under Rule 12(b)(6), the court construes the complaint in the light most favorable to the plaintiff; accepts as true the plaintiff's factual allegations; and determines whether the complaint "contain[s] sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotation and citation omitted). "A claim has facial plausibility when the plaintiff pleads factual conduct that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* A complaint must provide "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*,

---

[2]Plaintiffs concede that the claim of violation of Equal Credit Opportunity Act (Count IV) is time-barred. (Pl.'s Resp., docket # 25, PageID.569.)

550 U.S. 544, 555 (2007)." If "the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint . . . has not 'show[n] that the pleader is entitled to relief.'" *Iqbal*, 556 U.S. at 679 (quoting FED. R. CIV. P. 8(a)(2)).

The more rigorous pleading standards of Rule 9(b) apply to Plaintiffs' claims based on fraud. Under Rule 9(b), "[i]n alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake." To allege fraud with particularity, Plaintiffs must, at a minimum, "allege the time, place, and content of the alleged misrepresentation on which [they] relied; the fraudulent scheme; the fraudulent intent of the defendants; and the injury resulting from the fraud." *United States ex rel. Bledsoe v. Cmty. Health Sys., Inc.*, 342 F.3d 634, 643 (6th Cir. 2003) (internal quotation marks omitted).

## DISCUSSION

### A. RICO Claim

The Court begins with the RICO claim, which is the only remaining federal claim in the case. Plaintiffs assert that Defendants violated 18 USC § 1962(c), under which it is "unlawful for any person employed by or associated with any enterprise engaged in, or the activities of which affect, interstate or foreign commerce, to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity or collection of unlawful debt." A violation of this statute requires "(1) conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity." *Sedima, S.P.R.I. v. Imrex Co.*, 473 U.S. 479, 496 (1985). Plaintiffs must allege each of these elements to state a claim. *Heinrich v. Waiting Angels Adoption Services, Inc.*, 668 F.3d 393, 404 (6th Cir. 2012).

"Racketeering activity consists of acts which are indictable under a number of federal statutes listed in 18 U.S.C. § 1961(1)(B)," including, among other things, mail fraud under 18 U.S.C. § 1341. *Id.* To show a pattern of racketeering activity, a plaintiff must plead, among other things, at least two predicate acts occurring within a ten-year period. 18 U.S.C. § 1961(5). Plaintiffs Mr. and Ms. Lindberg allege mail and wire fraud as the predicate acts in their racketeering claim. (Compl., docket # 1, ¶ 160.) "Mail fraud consists of (1) a scheme to defraud, and (2) use of the mails in furtherance of the scheme." *Heinrich*, 668 F.3d at 404. (internal quotation omitted). The elements of wire fraud mirror mail fraud "except that one must use the wires in furtherance of the scheme to defraud. *Id.* (internal quotation omitted). A "scheme to defraud" means "any plan or course of action by which someone uses false, deceptive, or fraudulent pretenses, representations, or promises to deprive someone else of money." *Id.* (internal quotation omitted). It is also necessary to demonstrate *scienter* to establish a scheme to defraud. *Id.* The scienter requirement "is satisfied by showing the defendant acted either with a specific intent to defraud or with recklessness with respect to potentially misleading information." *Id.* To satisfy the heightened pleading requirements of Rule 9(b) when pleading predicate acts of mail or wire fraud, "a plaintiff must (1) specify the statements that the plaintiff contends were fraudulent, (2) identify the speaker, (3) state where and when the statements were made, and (4) explain why the statements were fraudulent." *Id.* (internal quotation omitted). "[T]o allege a valid RICO claim . . . a plaintiff must show not only that the predicate act was a 'but for' cause of plaintiff's injuries, but also that it was a proximate cause." *Id.* at 405 (internal quotation omitted).

Plaintiffs Complaint does not satisfy the pleading requirements of Rule 9(b) necessary to show a predicate act of mail or wire fraud. Plaintiffs identify the allegedly forged mortgage

agreements and allegedly forged notices of adjournment as fraudulent statements, but they do not identify any specific mailing or communication through the wires. They do not identify the speaker authoring the allegedly fraudulent statements; nor do they specify where and when the statements were made. At most, Plaintiffs allege that Ms. Lindberg "met with" Marisol Lindstrom in 2010 and received deceptive information during that meeting. "Met with" implies an in-person meeting, not a communication through the wires. But even assuming the meeting took place via teleconference and amounted to a single act of wire fraud, the Lindbergs have failed to satisfy the specificity requirements of Rule 9(b) in connection with more than one predicate act. The Lindbergs simply contend that "every mailing of the forged mortgages, and later the fraudulent adjournments, the mailing and recording of the fraudulently manufactured sheriff's deed," constitute mail fraud. (Pls.' Resp., docket # 25, PageID.567.) This is not specific enough. Plaintiffs have not established the predicate acts necessary to establish a claim under RICO.

Even assuming Plaintiffs have established the necessary predicate acts, they have failed to establish a pattern of racketeering activity necessary to state a RICO claim. "Although necessary to sustain a RICO claim, the pleading of two predicate acts may not be sufficient because § 1961(5) 'assumes that there is something to a RICO pattern *beyond* the number of predicate acts involved.'" *Moon v. Harrison Piping Supply*, 465 F.3d 719, 724 (6th Cir. 2006) (quoting *H.J. Inc. v. Northwestern Bell Tele. Co.*, 492 U.S. 229, 238 (1989) (emphasis in original)). The term "pattern" requires "continuity plus relationship," two analytically distinct prongs. *Id.* (internal quotation marks omitted). To establish relatedness, a plaintiff must allege predicate acts that "have the same or similar purpose, results, participants, victims, or methods of commission, or are otherwise interrelated by distinguishing characteristics and are not isolated events." *H.J. Inc.*, 492 U.S. at 240.

Continuity refers "either to a closed period of repeated conduct, or to past conduct that by its nature projects into the future with a threat of repetition." *Id.*

Plaintiffs have pleaded neither a closed-ended period of continuity nor past conduct that by its nature projects into the future. As in the *Moon* case, all of the predicate acts Plaintiffs Mr. and Ms. Lindberg allege "were keyed to Defendants' single objective" of profiting from a foreclosure under the Lindbergs' mortgages. *Moon*, 465 F.3d at 725. Like the plaintiff in *Moon*, the Lindbergs allege no other scheme or purpose, and they allege no facts that suggest the alleged scheme would continue once the Defendants accomplished their alleged goal. *Id.* "In circumstances such as these, the purported racketeering activity does not bear the markings of the 'long-term criminal conduct' about which 'Congress was concerned' when it enacted RICO." *Id.* at 726. *See also Vemco, Inc. v. Camardella*, 23 F.3d 129, 134-35 (6th Cir. 1994) (holding that a single scheme emanating from a dispute over an ordinary construction contract did not satisfy the continuity requirement under RICO). If Plaintiffs' allegations were enough to state a RICO pattern, every individual challenge to a foreclosure could be re-cast as a RICO claim, and this is not what the RICO statute covers.

For all of these reasons, the Court concludes that Plaintiffs have failed to state a claim for violations of RICO.

### B.   *Remaining Claims*

All remaining claims in this case arise under state law. Supplemental jurisdiction provides the only basis for the Court to exercise jurisdiction over the state law claims. Having dismissed the sole claim over which it has original jurisdiction, the Court declines to exercise supplemental jurisdiction over the remaining claims in this case. 28 U.S.C. § 1367(c)(3).

**ACCORDINGLY, IT IS ORDERED**:

1. Defendants Bank of America, N.A. and Ocwen Loan Servicing, LLC's Motion to Dismiss (docket # 14) is **GRANTED** to the extent Defendants seek dismissal of Plaintiffs' RICO claim (Count V); **DISMISSED AS MOOT** to the extent Defendants' seek dismissal of Plaintiffs' Equal Credit Opportunity Act claim (Count IV); and **DENIED WITHOUT PREJUDICE** in all other respects.

2. Plaintiffs' state law claims (Counts I, II, III) are **DISMISSED WITHOUT PREJUDICE**.

3. The Rule 16 Conference scheduled for November 5, 2015 at 699 Federal Building, Grand Rapids, MI before the undersigned, is **CANCELLED**.

                                                                                  /s/Robert J. Jonker
                                                        Robert J. Jonker
                                      Chief United States District Judge

Dated: November 4, 2015